## FREDERICK N. D. VAN LIEN *v.* MATTHEW BYRNES.

B. applied to V. L. & Co., brokers, to procure a loan of $9,000. They introduced him to S., another broker, who in turn introduced him to St. J., who offered him a loan of $7,000. This he agreed to take, but subsequently, finding it insufficient for his purposes, declined it. S. thereafter procured another loan for him, for which he paid a commission.

*Held*, I. That V. L. & Co. could recover a reasonable compensation for procuring the loan of $7,000, S. having told B., the defendant, that he, S., had nothing to do with the commissions on that loan, but would settle with V. L. & Co.

II. That evidence of conversations between S. and B. was inadmissible, unless confined to conversations showing a payment to S. for the commissions on the first loan.

III. That parol evidence that a receipt was given by S., which was intended to cover both loans, was inadmissible, and was properly excluded. The receipt should have been produced.

Where no custom is shown, a broker, like any other person who performs services for another, is entitled to compensation; and it is immaterial whether his services proved beneficial to the party who employed him or not. If he has fully performed what he was employed and undertook to do, he is entitled to be remunerated.

An undisclosed principal may always sue to enforce rights acquired on his behalf by his agent, though he does so subject to any equities which the defendant may have against the agent.

APPEAL by defendant from a judgment of the First District Court. This action was brought to recover for brokers' services, rendered to the defendant by the firm of Van Lien & Co., who assigned the claim to the plaintiff. The facts were these: Samuel Beman, who was in the employ of Van Lien & Co., brokers, having heard from one Flynn, another broker, that the defendant wished to obtain a loan, went to him, and agreed with him to procure him a loan of $9,000, for one per cent. commission. Beman then introduced him to one Spafford, another broker, by whom he was introduced to a Mr. St. John. St. John agreed to loan him $7,000, which the defendant agreed to take, but afterwards declined, because it was insufficient for his purposes. Spaffard afterwards procured another loan for the defendant, on the same property, for which he paid Spaffard, taking the following receipt:

" Rec'd, New York, Sept. 13th, 1855, from Mr. Matthew Byrnes, forty-five dollars, in full for commissions for negotiating loan for him upon house in Lexington avenue, near Twenty-ninth street, and for all charges against him to date.

" $45.                    (Signed)        H. A. SPAFFARD."

Mr. Spaffard testified, however, that he told the defendant

that he had no claim against him for procuring the first loan; that he had nothing to do with those commissions, but would settle for them with Van Lien & Co., as they employed him. And it further appeared that they did settle with him therefor. The defendant's counsel called, upon the trial, one Albon P. Mann, who testified that he was present at a conversation between Spaffard and the defendant, about three weeks subsequent to the defendant's refusal to take the first loan. The counsel then asked him the following questions:

"Was the loan between St. John and the one subsequently taken talked over there?"

Objected to, and excluded.

"Was a receipt given, which was intended to embrace both loans?"

Objected to, and excluded.

The defendant's counsel also offered to show that the loan of $7,000 was not large enough, and that he subsequently effected another.

This was objected to and excluded. The court rendered judgment for the plaintiff for $70, and the defendant appealed. The facts, except as above stated, appear fully in the opinion of the court.

*Thompson and Kellogg*, for the appellant.

*F. W. Burke*, for the respondent.

DALY, J.—The plaintiff is a member of the firm of Van Lien & Co., who are brokers, engaged in the business of procuring loans upon real estate. The defendant, Byrnes, wished to obtain a loan of $9,000 upon two houses; and one Beman, who was acting as the clerk of Van Lien & Co., went to the defendant, and the defendant agreed to pay one per cent. commission for procuring the loan. Beman took his application, and introduced him to one Spaffard, another broker, who introduced the defendant to one St. John. St. John agreed to loan $7,000 upon the houses, and the defendant agreed to take it; but, a week

after his interview with St. John, the defendant, finding that he could not get along with the $7,000, went with Spaffard to St. John, and the loan was given up. Spaffard afterwards obtained another loan for the defendant, for which, it appears, the defendant paid him a commission. The action was brought by the plaintiff to recover compensation for procuring the loan of $7,000; that is, he claimed for commission due him to the amount of $70. It further appeared that Spaffard told the defendant that he (Spaffard) had nothing to do with the commission from him; that he (Spaffard) would settle with Van Lien & Co., who employed him; and Spaffard testified that Van Lien & Co. had settled with him.

The case discloses that a person was procured who was ready and willing to loan $7,000 upon the security that the defendant had to offer; and that, though the defendant was anxious to get $9,000, he concluded to take the $7,000, though he afterwards changed his mind. It does not appear that the payment of a commission was to depend upon his obtaining exactly the sum of $9,000; and, from his consenting to take a less sum, the law would adjudge an implied agreement on his part to pay a just and fair compensation to the plaintiff for his services in assisting the defendant to procure that sum. It is urged, however, on the part of the defendant, that, as he afterwards changed his mind, and did not accept the proposed loan of $7,000, he is not bound to pay anything to the broker; that, though a person was procured who was willing to loan him $7,000, which he was at first willing to take, yet, having concluded afterwards not to take it, he has derived no benefit from what was done by the plaintiff or his clerk, but has obtained another loan, through another broker, for which he has paid a commission.

We are referred to several English cases (*Read* v. *Rann*, 10 Barn. & Cres. 438; *Dalton* v. *Irvin*, 6 C. & P. 289; *Brood* v. *Thomas*, 7 Bing. 101) as authorities for the doctrine, that where a broker undertakes a particular business, he can recover nothing for his services unless that business is completed; though the person for whom the broker acts has, in the transaction nego-

tiated by the broker, made a bargain, which he afterwards un-warrantably refuses to complete and carry out. These cases, however, are founded upon a mercantile usage prevailing in the city of London, by which nothing is allowed to the broker unless the matter brought about by his instrumentality is completed. In all these cases, evidence of the custom was given, and they were decided with reference to it. The reason of the custom, as stated by Tindal, C. J., in *Brood* v. *Thomas*, being, that nothing was allowed to the broker unless the transaction was consummated, because the rate of payment established by the custom, if the business was completed, was greater than would otherwise be a fair compensation for the broker's services. This was merely recognizing that, by the custom of London, a broker in that city was not entitled to compensation for anything he might do for a party, which was not finally consummated, but was engaged in the prosecution of a general business, in which the large compensation he was entitled to receive, where the transactions he negotiated were completed, was regarded as a fair equivalent for his loss of time and service in matters not completed by the parties. It was therefore held in these cases that the broker must recover according to the usage or not at all, as all parties, in the absence of proof of a different contract, were presumed to contract with reference to the custom, and no other contract could be implied. Where no custom is shown, a broker, like any other person who performs service for another, is entitled to compensation; and it matters not whether what he has done prove beneficial to the party who employs him or not, if he has fully performed what he undertook to do, he is entitled to be remunerated for his services. In this case, the plaintiff's clerk undertook to procure for the defendant a loan of $9,000 upon his property, and, through the steps taken by Beman, the defendant was brought in connection with a per-who was willing to loan $7,000 upon it, which the defendant was willing to take. If the defendant had received that amount from St. John, he would have been indebted to the exertions of the plaintiff's clerk for procuring it, and could there be a doubt

but that in that case the defendant would be bound to pay something to the plaintiff for rendering that service? Having agreed to take that sum, and thus dispensed with all further service on the part of the plaintiff, he concludes, a week afterwards, to change his mind, and declines to take it. Now, shall the broker get nothing for his time, knowledge, and exertions in procuring a loan, with which the defendant is satisfied and agrees to take, but afterwards concludes to decline? If it appeared that brokers in this city, where the transactions they negotiate are completed and carried out by the parties, are accustomed to receive a rate of compensation fixed with reference to their being subject to loss of time and service where the business they negotiate falls through, it might be very well, in a case like the present, to hold that the plaintiff should get nothing; but, in the absence of proof of any such usage or custom, would it be just and equitable to say that he should give his time and attention to the defendant's business and receive nothing for it; that the defendant should avail himself of the services of the plaintiff's clerk in discovering a person who was willing to make a loan upon his property, and be under no obligation to pay anything for the service? If the plaintiff was not engaged in this particular business of procuring loans upon real estate, or if the agreement with Beman was, that his receiving compensation was to depend upon his obtaining the exact sum of $9,000, then, in the one case, the service might be regarded as a mere incidental or voluntary one, and in the other as a contract not performed. But it was a service rendered by the plaintiff's clerk in the regular course of business; and the evidence would not have warranted the justice in concluding that the promise to pay was conditional. The defendant had the benefit of the plaintiff's knowledge and services, and might have obtained the $7,000, and, if he concluded afterwards not to take it, he was bound to make some compensation to the plaintiff.

That the plaintiff, through his clerk, was the procuring cause of the loan of $7,000 being offered to the defendant there can be no doubt. It is true, that Beman went to Spaffard, another bro-

ker, and it was through Spaffard that St. John was found. But that makes no difference, Spaffard considered himself employed by the plaintiff in the matter, and the plaintiff paid him for his services.

Nor does it make any difference that Beman did not disclose to the defendant that he was acting as the clerk of the plaintiff. An undisclosed principal may always sue to enforce rights acquired on his behalf by his agent, though he does so subject to any equities which the defendant may have against the agent. *Taintor* v. *Prendergast*, 3 Hill, 72.

Beman agreed that the defendant might settle with Spaffard. He told the defendant that any settlement he made with Spaffard would be satisfactory to him; and undoubtedly any settlement made with Spaffard would bind the plaintiff. But no evidence was given or offered of such a settlement. If anything had been paid by the defendant to Spaffard in the presence of the witness Mann, the conversation between the defendant and Spafford respecting such payment, and what it was intended to discharge, would have been competent; and as Spaffard had denied that any such settlement had taken place, a receipt from him, disclosing the fact of such a settlement, might have been given in evidence to contradict him. But conversations between the defendant and Spaffard, three weeks after the defendant had declined the $7,000 loan, were wholly immaterial, unless they related to an actual settlement with Spaffard. The defendant was not entitled to ask for such conversations generally. If any payment had been made to Spaffard, in discharge of the claim, or any settlement effected with him, by the defendant in the witness's presence, that fact could have been shown by a question put directly to the witness. He might have been asked if had heard any conversation between them, or had seen any money paid relating to a settlement of the claim, and if he replied in the affirmative, he would have been allowed to state what he had seen and heard. But he was asked if the loan between St. John and the defendant and the one subsequently taken was talked over in his presence. Whether it was or not,

was entirely immaterial. The question should have been confined to conversations relating to a settlement. If Mann had witnessed any settlement, he should have been directly interrogated as to the fact; or if, after the general inquiry was excluded, the defendant should have made a distinct offer to prove a settlement of the claim in a conversation between Spaffard and the defendant, it would have been error on the part of the justice to have refused to receive the evidence. But no such offer was made, and it is very plain that the defendant had no such evidence. If any receipt was given, it should have been produced. The defendant was not at liberty to ask if one had not been given embracing both claims. This was not asking for facts, but for the opinion of the witness, and was properly excluded. So also were the questions relating to the subsequent loan. They were wholly immaterial. The plaintiff proved that he had rendered service to the defendant, to enable him to procure a loan upon his property, for which he sought to be compensated; and what the defendant did, after he had declined to take that loan, could not affect the question of his liability to the plaintiff for aiding him to procure a loan, which he might have had, and was at first willing to take, but afterwards declined.

The justice appears to have allowed at the rate of one per cent. upon the $7,000; and as there was evidence that the defendant agreed to pay that amount for obtaining the loan of the $7,000, and also of one per cent. if $9,000 was obtained, I think he estimated the value of the service as correctly as he could.

Judgment affirmed.